**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

HOVHANNES BEORKYUBEYUKYAN,

Petitioner,

v.

TODD LYONS, et al.,

Respondents.

No. 5:26-cv-03742-AYP

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I. SUMMARY

Petitioner Hovhannes Beorkyubeyukyan ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Dkt. No.1) (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California.

Having reviewed the record, and consistent with several recent decisions by this Court and in this District, the Court concludes that Petitioner's re-detention on July 1, 2026—without any opportunity to be heard as to whether he poses a flight risk or danger to the community—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an

individualized hearing.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Armenia. (Dkt. No. 8-1 at 1.) Petitioner entered the United States on July 6, 2023, and he was arrested by the United States Border Patrol ("USBP") near San Ysidro, California. (Dkt. No. 8-1 at 3.) On the same date, USBP served Petitioner with a Notice to Appear pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") and released him. *Id.* Petitioner contends that despite knowledge of his presence in the United States, and his pending applications for asylum and humanitarian relief, Respondents have allowed him to reside freely in the community while his immigration proceedings remain pending. (Dkt. No. 1 ¶¶38-44.) Petitioner asserts that during the time of his residence in the United States, he has established substantial ties to the community and remains an integral member of his household. (Dkt. No. 1 ¶¶45-49.)

On April 20, 2026, Petitioner was arrested for Grand Theft from Person (487 (C) PC) and infliction of corporal injury on a spouse or cohabitant under California Penal Code 273.5(a). (Dkt. No. 8-1 at 3.) On May 8, 2026, the Burbank City Attorney's Office confirmed that it did not pursue filing any criminal charges against Petitioner in relation to his arrest for these charges and that it had rejected his case. (Dkt. No. 1 at 41.) Petitioner asserts that he has no criminal convictions and has never been sentenced for any criminal offense. (Dkt. No. 1 ¶¶50-51.) Respondents assert that on July 1, 2026, ICE Enforcement and Removal Operations ("ERO") officers arrested Petitioner at his last known residence subject to an immigration arrest warrant. (Dkt. No. 8-1 at 2.) Petitioner asserts that Respondents did not provide him with meaningful notice, an individualized custody determination, or an opportunity to contest his detention prior to his arrest. (Dkt. No. 1 ¶¶62-66.) Petitioner remains in immigration custody at the Adelanto ICE Processing Center as of the filing of

the Petition. (Dkt. No. 1 ¶67.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on July 6, 2026. (Dkt. No. 1.) Respondents filed their Answer to the Petition (the "Answer") on July 14, 2026. (Dkt. No. 8.) Petitioner submitted his Reply to Respondents' Answer to the Petition on July 16, 2026. (Dkt. No. 9.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III. DISCUSSION

Petitioner argues that Respondents violated the Due Process Clause of the Fifth Amendment by revoking his liberty without notice, without an individualized custody redetermination, and without an opportunity to be heard as to whether he poses a danger or a flight risk. (Dkt. No. 1 ¶¶109-132.) Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents assert that, based on his arrest for grand theft, Petitioner appears to be subject to mandatory detention under 8 U.S.C. § 1226(c) pursuant to the Laken Riley Act. (Dkt. No. 8 at 2-3.) Respondents additionally contend that Petitioner's detention is authorized under the discretionary framework of 8 U.S.C. § 1226(a) because his arrests violate the terms of his conditional release. (Dkt. No. 8 at 4.) However, Respondents concede that Petitioner has a constitutional right to be heard as to whether his detention is warranted and that "the Court should either deny the Petition or alternatively order that a bond hearing before an immigration judge be provided within 7 days." *Id.*

### A. The Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v.*

*Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention is Governed by the Discretionary Framework of 8 U.S.C. § 1226(a)**

Section 1226(a) is "the default detention statute for noncitizens in removal proceedings." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Section 1226(c) "carves out a statutory category of aliens who may not be released under § 1226(a)," mandating detention for a noncitizen apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Id.* at 289. In January 2025, the LRA added a new category of persons subject to mandatory detention under §1226(c): an individual who is "inadmissible" on certain grounds and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death

or serious bodily injury to another person." LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1226(c)(1)(E)(emphasis added).

While the Ninth Circuit has "long held that 'information on an authenticated immigration form,'" including an I-213, "'is presumed to be reliable," that is only the case where there is no "evidence to the contrary presented by the alien." *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022) (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)). The Burbank City Attorney's decision not to prosecute Petitioner's grand theft charge (Dkt. No. 1 at 41) serves as contrary evidence, directly undermining the basis for Petitioner's mandatory detention under Section 1226(c). Such evidence was presented in the Petition and Respondents do not address this contrary evidence in their Answer.

Absent evidence that charges are pending against Petitioner, Respondents have not shown that Section 1226(c)(1) applies to Petitioner. The statute applies where a person "is charged with, is arrested for, [or] is convicted of . . . theft." 8 U.S.C. § 1226(c)(1)(E). The statute's use of the present tense indicates that it is only to a person who presently "is arrested" for or "is charged" with theft. "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992); *Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) ("To ascertain a statute's temporal reach, this Court has frequently looked to Congress' choice of verb tense.") (cleaned up). For these reasons, courts have found that Section 1226(c)(1)(e) does not apply to individuals who were charged with a qualifying criminal offense in the past. *See Matute v. Jamison*, No. 2:25-cv- 07093, 2026 WL 461557, at * 5 (E.D. Pa. Feb. 18, 2026) (citations omitted) (interpreting the LRA's use of the present to mean that it did not include one who was "arrested years ago, even if that arrest never manifested in indictment, because 'the present tense generally does not include the past.'") (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010)); *Hairo v.*

*Crawford*, No. 2:25-cv-704, 2026 WL 286176, at *2 (E.D. Va. Feb. 3, 2026) (relying on present tense construction to find that a petitioner was no longer covered by the Laken Riley Act, once his criminal charges were dismissed); *Helbrum v.Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *5-6 (S.D. Iowa Sep. 30, 2025) (same); *Pereira v. Warden*, No. 1:26-cv-01480-DJC-JDP, 2026 WL 1272714, at *1, n.1 (E.D. Cal. May 8, 2026) (same).

As Respondents have failed to refute Petitioner's evidence that he was not "arrested" for or "charged" with a qualifying crime, at the time of his detention on July 1, 2026, the Court concludes that Respondents have not shown that Petitioner is subject to mandatory detention under Section 1226(c).

**C. Petitioner's Sudden Re-Detention Without Any Opportunity to Be Heard as to Whether he Poses a Danger or Flight Risk Violates Due Process**

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91. When USBP released Petitioner after determining that he was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs

strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that his re detention without notice or a pre deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents deprived him of the ability to contest whether he posed a danger or flight risk before revoking his conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty

interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi,* 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking his release and re-detaining him absent adequate pre deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts he filed for asylum, developed ties to the community, and remains an integral member of his household. (Dkt. No. 1 ¶¶38 and 45-49.) While Petitioner remained subject to the conditions of his release during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's nearly three (3) year period of release, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well established. Accordingly, the Court concludes that the Due Process

Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). *See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to provide Petitioner with any opportunity to challenge the basis for revocation of his release creates a significant risk of erroneous deprivation. Both *Matter of Sugay* and *Saravia* require materially changed circumstances before Respondents may revoke a prior release determination. *Sugay*, 17 I. & N. Dec. at 640; *Saravia*, 280 F. Supp. 3d at 1194–97. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet Respondents fail to refute the record evidence indicating that Petitioner's continued release posed no threat to either interest when he was re-detained on July 1, 2026.

The record indicates that Petitioner had no allegations of criminal conduct, no criminal convictions, and that no criminal charges were pursued in connection with his detention at the Burbank Police Department. (Dkt. No. 1 at 41 and Dkt. No. 1 ¶¶50-51.) Respondents identify no material change in circumstances arising between the time of Petitioner's release in July 2023 and his sudden re-detention on July 1, 2026. As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior release determination absent such

materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia*, 280 F. Supp. 3d at 1196–97.

Further, the procedure employed here creates a substantial risk of error. Petitioner asserts that USBP released him from custody and Respondents have allowed him to reside freely in the community since such time. (Dkt. No. 1 ¶¶38-44.) Yet despite authorizing Petitioner to reside freely in the community for nearly three (3) years, Respondents provided no advance process to assess whether revoking his release would further the permissible purposes of immigration detention. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re detaining a person who has been safely residing in the community.

Courts considering similar re detentions have consistently concluded that the Respondents' interest in bypassing pre deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25 cv 02879 MCS MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that

due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Respondents do not identify any administrative or public safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to revoking his liberty. Nor do Respondents identify any individualized risk posed by Petitioner at the time of his re-arrest. On the record before the Court, Respondents' interest in re-detaining Petitioner absent the constitutionally protected pre deprivation procedures due—without any opportunity to be heard as to whether his detention is warranted—is exceptionally weak. Under *Mathews*, the Government has no interest in bypassing pre deprivation process in these circumstances.

Accordingly, the third Mathews factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from

confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on July 1, 2026, without adequate pre-deprivation process, violated due process and that he should be released forthwith.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Hovhannes Beorkyubeyukyan's (A#244-097-280) immediate release and restoration of liberty to the conditions existing prior to July 1, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: October 23, 2026

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE